**ORIGINAL**

# In the United States Court of Federal Claims
No. 17-679C
(Filed: January 31, 2018)

**FILED**
**JAN 31 2018**
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JAMES LEE WILLIAMS,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER OF DISMISSAL

**WILLIAMS**, Judge.

    Plaintiff pro se James Williams leases land in an area along the border of California and Arizona known as the Yuma Island. Plaintiff seeks $400,000,000 in damages for himself and the other seven families residing on the Yuma Island, as descendants of the original black settlers, based upon discriminatory treatment of their ancestors and a taking of their water rights. Plaintiff requests that the Yuma Island land and water rights be deeded to him as well as the families who are still leasing land from the Arizona Land Department. Compl. Ex. 3.

    This matter comes before the Court on Defendant's motion to dismiss. For the reasons stated below, Defendant's motion to dismiss is granted.

### Background[1]

    In 1902, pursuant to The Reclamation Act of 1902,[2] the Bureau of Reclamation initiated the Yuma Reclamation Project, which required all land along the Colorado River to be surveyed

---

[1]     This background is derived from Plaintiff's complaint and the 189 pages of exhibits. This background should not be construed as findings of fact.

[2]     The Reclamation Act of 1902 directed the Secretary of the Interior to reclaim arid lands in certain states through irrigation projects and open those lands to entry by homesteaders. 43 U.S.C. §§ 371 et seq. (2016); Klamath Irrigation Dist. v. United States, 67 Fed. Cl. 504, 507 (2005). Under a later amendment to the Reclamation Act, "individual water users served by a reclamation

7016 3010 0000 4308 3792

to determine suitability for farming. Compl. Ex. 2, at 1. Homesteading could not begin until canals were constructed to deliver water to irrigable land. Compl. Ex. 5, at 1. At this time, the Yuma Island land belonged to the state of Arizona and was part of the North Gila Valley Division. However, by 1920, the Colorado River had changed course, leaving the Yuma Island in California. Compl. Ex. 2, at 1. An African American community was established on the Yuma Island in the mid-1920s. Compl. Ex. 5, at 1.

> Plaintiff alleges:
>
> In the mid-1920s, African American World War I veterans and friends came to Yuma County to homestead on public land because their Government was giving away free land as an incentive to settle the desert southwest. Even though they had military preferences; they were excluded from the Yuma Reclamation Project due to racially discriminatory policies administered by the Bureau of Reclamation and the Bureau of Land Management.
>
> Out of necessity, they became squatters on public land when the Bureau of Reclamation offered no assistance or facilities for African Americans to apply for homestead because the country was legally segregated when the Supreme Court approved "Separate but Equal" laws. In fact, African Americans' Constitutional Rights were violated with impunity.
>
> In 1931, Water Entitlements were approved for the land where the black community was established, which became known as "The Yuma Island". However, as required by the 1902 Reclamation Act, the Bureau of Reclamation had to construct canals to deliver the water first before allowing settlers to apply for homestead, which was never done. Their action excluded the black community from the Yuma Reclamation Project, and it denied them the right to acquire the land and water rights . . . .

Compl. 2.

In 1928, the Boulder Canyon Act set the annual allotment of reclamation water for three of the seven states that draw water from the Colorado River - - California, Arizona, and Nevada.[3] Compl. Ex. 5, at 2. The Act "mandated that California distribute the 4.4 million acres feet of water between seven water districts," including the Yuma Reclamation Project. Id. In 1931, the Superintendent of the Yuma Reclamation Project recommended that the state of California provide water to the Yuma Island from its annual allotment, as the land was then in California rather than Arizona. Id. This recommendation was memorialized in the Boulder Canyon Project Agreement

---

project could acquire a 'water-right certificate' by proving that they had cultivated and reclaimed the land to which the certificate applied." 43 U.S.C. § 541.

[3] California, Arizona, and Nevada are known as the Lower Basin States, while Colorado, New Mexico, Utah, and Wyoming are known as the Upper Basin States. Compl. Ex. 5, at 2.

signed on August 18, 1931, also known as the Seven Party Agreement. Id.; see also Compl. Ex. 10.

The Seven Party Agreement formed a priority system for the seven California water districts drawing water from the Colorado River, and granted the Yuma Island priority-2, meaning that it was second only to the Palo Verde Irrigation District for purposes of receiving allocated water. Compl. Ex. 10. Plaintiff states that the Yuma Island was not included in the list of water entitlements the Bureau of Reclamation provided as a result of a Supreme Court decree in the case of Arizona v. California, which enforced the Boulder Canyon Act and authorized the water allotment each Lower Basin state would receive. Compl. Ex. 1, at 4, Ex. 5, at 3. Plaintiff alleges that this omission led to "discriminatory policies which deprived the black community of Water Entitlements and supported an ongoing effort that identified the Yuma Island community as unauthorized water users." Compl. Ex. 1, at 4. In 1982, the Bureau of Land Management transferred the Yuma Island back to the state of Arizona. Id.

## Discussion

Plaintiff has the burden of establishing subject-matter jurisdiction in this Court. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The Court must dismiss the action if it finds subject-matter jurisdiction to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to Plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

The filings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers.'" Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs still bear the burden of establishing the Court's jurisdiction and must do so by a preponderance of the evidence. See Reynolds, 846 F.2d at 748; Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act provides that this Court:

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2016). The Tucker Act is not money-mandating, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). To establish jurisdiction, a plaintiff must seek money damages under a source of substantive law. "[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting Testan, 424 U.S. at 400); see Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008) ("[A] plaintiff must identify a separate source of substantive law that creates the right to money damages." (internal citation and quotation marks omitted)).

Plaintiff seeks to recover damages on behalf of himself and "seven other black families who are ancestors of the original black settlers." However, under Rule 83.1 of the Rules of the United States Court of Federal Claims, a pro se plaintiff may only represent "oneself or a member of one's immediate family, but may not represent . . . any other person . . . ." Immediate family is generally interpreted as being limited to a plaintiff's parents, spouse, siblings, or children. Fast Horse v. United States, 101 Fed. Cl. 544, 547-48 (2011) (internal citations omitted). Therefore, this Court does not have jurisdiction over any claims brought on behalf of the other Yuma Island families.

Plaintiff names the Secretary of the Interior, the Bureau of Land Management, the Bureau of Reclamation and its employees Terrance J. Fulp, Regional Director of the Lower Colorado Regional Office, Margot Selig, Water Administrator for the Lower Colorado Group, and Nancy DiDonato, Contract and Repayment Specialist for the Yuma Area Office, the Bureau of Indian Affairs, the President of the Quechan Indian Tribe, the Executive Director of the Colorado River Board of California, the Chief Executive Officer of the Metropolitan Water District, Ron Derma, Manager of the Bard Water District, the Arizona State Land Commissioner, and Thomas Buschatzke, the Director of the Arizona Department of Water Resources. Compl. Ex. 3. The only proper defendant in this Court is the United States. United States v. Sherwood, 312 U.S. 584, 588 (1941); Berdick v. United States, 612 F.2d 533, 536 (Ct. Cl. 1979). To the extent that Plaintiff alleges claims against parties other than the United States, this Court lacks jurisdiction to entertain those claims.

The gravamen of Plaintiff's complaint appears to be that the Department of Interior, Bureau of Reclamation and Bureau of Land Management, violated the Constitutional rights of black settlers, Plaintiff's ancestors, when the Government denied these settlers the right to homestead by administering racially discriminatory policies in the 1920s. Plaintiff alleges this conduct violated the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution, the Thirteenth Amendment to the Constitution, and the Privileges and Immunities Clause of Article IV. However, because none of these provisions are money-mandating, they cannot form a basis for this Court's jurisdiction. LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (finding that the Due Process Clauses of the Fifth and Fourteenth Amendments are not money-mandating and therefore are insufficient as a basis for jurisdiction); Hardin v. United States, 123 Fed. Cl. 667, 671 (2015) (finding that Thirteenth Amendment is not money-mandating); Ivaldy v. United States, 123 Fed. Cl. 633, 637 (2015) (finding that the Privileges and Immunities Clause is not money-mandating).

Plaintiff alleges violations of 42 U.S.C. § 1983, arguing that Defendant excluded the African American families living on the Yuma Island from the Yuma Island Reclamation Project, failed to offer these families surface water support, denied the reclamation land settlers the right to homestead, and coerced the residents into signing agricultural permits. Compl. Ex. 1, at 2-3. This Court lacks jurisdiction over claims brought pursuant to 42 U.S.C. § 1983 as exclusive jurisdiction over those statutory claims is vested in the district courts. Del Rio v. United States, 87 Fed. Cl. 536, 540 (2009); see also Sharpe v. United States, 112 Fed. Cl. 468, 476 (2013) (stating that "the Court of Federal Claims is not a district court"). Plaintiff also alleges violations of 18 U.S.C. §§ 241-42, but this Court lacks jurisdiction over criminal matters. Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); Dumont v. United States, 85 Fed. Cl. 425, 430 (2009), aff'd, 345 F. App'x 586 (Fed. Cir. 2009).

Plaintiff alleges conspiracy and fraud, but because these claims sound in tort, this Court lacks jurisdiction to entertain them. Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Cycenas v. United States, 120 Fed. Cl. 485, 498 (2015) ("To the extent plaintiff's complaint asserts claims of conspiracy . . . those claims sound in tort . . . [and] this court lacks jurisdiction to adjudicate those claims.").

Plaintiff appears to allege a Fifth Amendment taking, stating that Defendant has prevented him from acquiring land and water rights. Compl. Ex. 5, at 5. However, even if Plaintiff has alleged a valid taking claim, this claim is time-barred. A claim brought under the Tucker Act must be filed within six years of the claim first accruing. 28 U.S.C. § 2501 (2016); see John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 135-36 (2008); Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003). This is a jurisdictional requirement that cannot be waived, as it is a prerequisite for the waiver of sovereign immunity in suits against the United States for money damages. John R. Sand & Gravel Co., 552 U.S. at 134. A taking claim "first accrues only when all the events which fix the government's alleged liability have occurred," and "the plaintiff was or should have been aware of their existence." Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (internal citation omitted); see also Navajo Nation v. United States, 631 F.3d 1268, 1273 (Fed. Cir. 2011). In other words, a taking claim accrues when the "taking action occurs." Navajo Nation, 631 F.3d at 1274.

Plaintiff alleges that the Bureau of Reclamation effected a taking of his right to acquire water rights, citing conduct that occurred decades ago that prejudiced his ancestors. Specifically, Plaintiff alleges that water entitlements for the Yuma Island were approved in 1931, but that the Bureau of Reclamation denied his ancestors the right to acquire land and water rights because it failed to construct canals to deliver water to the Yuma Reclamation Project, a prerequisite to opening the land to homesteading. Compl. 2. Because the Government conduct that gives rise to the alleged taking occurred 87 years ago, Plaintiff's claim is time-barred.

Plaintiff appears to argue that takings also occurred in two later time periods, claiming: (1) that in 1960, after completion of the Yuma Reclamation Project, the Bureau of Reclamation still retained custody over the land, thus continuing to deny the Yuma Island residents the right to acquire property and water rights, and (2) that a 2005 decree, adopted in 2006, filed by a Supreme Court special master in Arizona v. California, granted the same water approved for use by the Yuma Island to the Quechan Indian Tribe of Arizona, instead of to descendants of the original settlers. Compl. Ex. 1, at 3, Ex. 5, at 6. Because the alleged Government conduct that gives rise to these takings occurred 68 and 13 years ago, respectively, Plaintiff's taking claims are time-barred.

In addition to alleging Tucker Act jurisdiction, Plaintiff also appears to invoke the Administrative Procedure Act ("APA") as a basis for this Court's jurisdiction. Compl. 1 ("[T]his claim is submitted in accordance with the Administrative Procedures Act of 1946 for violation of public policies by the Department of the Interior, the Bureau of Reclamation, and the Bureau of Land Management."). However, this Court does not have jurisdiction over claims brought pursuant to the APA. Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (stating that the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to . . . grant relief pursuant to the Administrative Procedure Act" (internal citation omitted)).

In addition to his request for monetary damages, Plaintiff seeks equitable relief, asking that the land and water rights on the Yuma Island "be deeded to the eight black families who are still leasing the land from the Arizona Land Department." Compl. 3. However, this Court's authority to grant equitable relief is limited to certain tax cases, bid protests, and situations where such relief is an "incident of and collateral to" a monetary judgment. 28 U.S.C. §§ 1491(a)(2)-(b), 1507-08 (2016); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003). As none of these conditions are met here, this Court lacks authority to grant Plaintiff's requested equitable relief.

## Conclusion

Defendant's motion to dismiss is **GRANTED**. The Clerk is directed to dismiss this action.

*Mary Ellen Coster Williams*
**MARY ELLEN COSTER WILLIAMS**
**Judge**